This is our 11 o'clock Hurlbert v. National Union Fire Insurance Company, 4090910. We have for the appellant, William Graham Jr. and for the appellee, Michael Sanders. I apologize if you had a heart attack when I announced we were breaking until 1 o'clock. We're having a judge's meeting in between. Please proceed, Mr. Gray. Good morning, Your Honors. My name is William Graham. May it please the Court. I represent Wilbur and Hurlbert and Sherry Harrington in this matter. I won't belabor the facts unless the Court wishes me to clarify any of the facts. The appellant's primary argument is that the lower court erred in its grant of rescission to the National Union. Section 154 of the Insurance Code permits rescission if two elements are present, if the statement was false and if it was made with the intent to deceive or materially affects the risk. In addition, the Golden Rule case has modified that and indicated that where the policy contains language requiring the insured to respond to the best of their knowledge, the burden of accuracy is lowered to the insured's actual knowledge. In finding that Brewer made false statements on the renewal application, the trial court in this case failed to apply the Golden Rule standard, despite the application's statement that the representations were true to the best of the insured's knowledge and the renewal's reliance upon the insured's awareness. The Court found that there were false statements, but looking closely at those statements, the Court erred in that judgment. Regarding the death of Mr. Probert, based upon the coroner's report and the death certificate, Brewer knew that the death was from natural causes and was not a potential source of litigation for him. In addition, regarding the arrest for sexual assault… Counsel, if I could interrupt you, does your rescission argument pertain to the 0506 policy or the 0607 policy? I think it's primarily based upon the latter, but the initial representations were in the primary application and then the renewal… Just for clarification, didn't the trial court find that the 0506 policy was a claims-made policy and therefore it clearly did not cover the alleged negligence in this case? The prior policy? The first policy, the 0506 policy. Ah. Wasn't that count one? The initial policy was a claims-made policy. Right. Right. Okay, yes. And so it should have covered the claim made. I thought the claim was made between 06 and 07, and therefore the 0506 policy was not implicated in only the 0607 policy. I stand corrected, Your Honor. Is that correct? Yes. Well, that being the case, and the arguments regarding rescission, misrepresentations, none of that really makes any difference concerning 05 and 06, since that policy provides no coverage anyway. Is that right? That would be correct. Okay, so basically your argument here today pertains to the 0607 policy. It does, but it is also indicating the other policy to the extent that the language is rather different. Well, to the extent they might tie in together. Exactly. From what the initial representations were and then representations made at the renewal time. That's exactly right. Okay, I follow that. Thank you. I'm sorry to interrupt you. Sure. Regarding the arrest for sexual assault, that was not a matter that changed Brewer's practice and was not a matter that implicated the policy whatsoever. So that was not a matter that he knew would lead to potential litigation. Finally, regarding the dental board investigation, no formal complaint had been filed by the dental board as of the renewal on March 1, 2006. So he did not have knowledge that that would lead to potential litigation or that was a matter that was required to be disclosed. You get an order from the people that permit you to practice dentistry saying, hey, we're worried about whether or not you have the physical and mental ability to practice dentistry. We wonder whether it's impaired. You need to submit to a physical and mental examination. I don't have to disclose that to my insurer? Well, at that point they had not pulled his license. No. They had not suspended him in any way. I imagine his heart beat a little faster when he got the... I mean, he knew it was of some significance. He knew it was of some significance and he complied with it and they found that he was suffering from depression, which he agreed with and a number of things in his life were not going right at that time. But coming down to it, it didn't affect his practice per se. It did not create a plan. Would it have been a circumstance that might result in a board complaint? He didn't know at that point in time that it would. I mean, might is a slippery slope. I mean, anything could result in a claim. I'm just reading that language from the renewal certification. Right. That seems to be language that you would have to disclose just about everything in the world. It would be very difficult to comply with a might. I would concede to you that it might, among many other things, might have affected his practice. But he did not know as of that point in time that it would. And based on golden rule, his obligation was to say what he knew as a fact. And he didn't know that to be a fact. He's produced an affidavit to the effect that he did not know that was a fact, that it would affect his practice. I'd say one last thing about golden rule. It notes that the court need not accept the insurer's representation of their own knowledge. Where there is evidence to the contrary, where there is evidence that he actually did possess knowledge. In this case, there was no evidence that he possessed actual knowledge. There was evidence that he knew of Robert's death and that he knew of the investigation, but not that there were claims made or going to be made or that there were formal complaints that would be filed. He did not possess that knowledge. And there was no evidence in the lower court contradicting his own testimony that he didn't possess that knowledge. Moving on to the element of was the false representation material to the risk assumed. Section 154 permits revision when there is such a material representation. In this case, there was no affidavit from National Union to indicate that the risk or the statement affected the risk, that it was material in any way. Instead, the court made what it's called a common sense assumption that it would. In this case, the court certainly erred where it made a ruling that was not based on the record. There was nothing to support the court's determination that these claimed or even found to be misrepresentation material if affected the risk assumed by the insurer. In the absence of such evidence on the record, I think the court clearly erred in its decision regarding that. Moving on to the issue of waiver, in Illinois State Bar v. Courageous, the court held that an insurer who wishes to rescind the contract must do so promptly and tender back what was received. Otherwise, the rescission claim will be waived. In Byrd-Moore v. Frank, the court made it clear that the tenderback must occur before filing the action for rescission. In this case, National Union didn't tender back the premiums until after the litigation was over. And even then, they were returned. They didn't tender back the premiums and they didn't even pursue rescission until a year and a half after they gave notice that they were denying coverage. Now, the trial court found that notice of denying coverage to be sufficient to eliminate the question of waiver. I don't think that that satisfies the ruling in Courageous. Courageous says that you have to pursue it promptly. A year and a half certainly is not promptly. I think the court erred in that regard. Regarding the issue of estoppel in Eclipse Manufacturing v. U.S. Compliance Company, the court found that where an insurer chooses to neither defend nor seek declaratory judgment, it's a stop from asserting policy defenses. That is the exact case that occurred here. National Union began to provide coverage and then they withdrew it and then sat on their hands until the judgment was rendered. This action was wrongful given that the claim was clearly covered on the face of the policy. And that wrongful denial of coverage should have yielded an estoppel of the policy defenses. The lower court was incorrect when it ruled it did not. The last issue that I'll address is the court's finding that Brewer impermissibly delayed in informing National Union of the claim and breached the policy thereby. Brewer offered testimony that he was not aware of a potential suit until an attorney made a request for records. And that was my firm making a request for records. At that time, he notified the insurer promptly of the litigation and the court should have found that that notice was adequate. If the court has any questions, I'm glad to answer them. Does the record show Helen Hurlburt's age? The age at the time of the dental procedure? Yes. The record would show it. I don't have it in front of me, but she was an elderly woman. Thank you, counsel. Mr. Sanders? Mr. Sanders, does it matter that there was no affidavit regarding materiality submitted? No, Your Honor. Why not? I would have liked it much better, but I don't think it is, given the circumstances of this matter. Contrary to what Plano says, this is not just anything that occurred. This isn't some incidence where she had complained about a bill or there was somebody who said that she needed her dentures adjusted even more. The reason it's material in this case, and the court was correct to find it with or without an affidavit, is because it goes directly to the heart of his dental practice, his ability to practice dentistry, and that's exactly what we insure. We insure his dental practice. What the IDPR, the Illinois Department of Financial and Professional Regulation... If it's so obvious, why was it so difficult to get an affidavit? As I put it, you might have noticed in the record, I did move for an extension of time to get the evidence deposition done because the underwriter worked for somebody else, and that somebody else wasn't going to give me the affidavit. He was going to make me come in, and I think I explained this in my motion. The file of subpoena, the subpoena of the company to bring her here, that was the issue. I mean, I filed my 213-F and G's using this person. After talking with her, you'll see that in the record. It was my disclosure. And you'll see in my motion that they were making me come to the subpoena to bring her in. They would not give me an affidavit. That's why I moved for the evidence deposition. But in this case, I mean, contrary to what the plaintiff says, we're not saying that he had to give us notice of anything or any matter might result in a claim. I mean, these were matters that were directly related to his practice. As the court pointed out, the IDPR was questioning, one, they were accusing him of violating the Dental Practice Act by the way he used his dental hygienists. They were accusing him of violating the Dental Practice Act by the way he kept his records. They were questioning his wrongdoing with regard to some of his patients. And then, of course, they had issued him an order in February of 2006, just a couple of weeks prior to him completing the March 1, 2006 application, ordering him to sit for that mental and physical exam. So given that these are directly related to his ability to practice, directly related to his practice, for example, Ms. Hurlburg, you'll notice in his, he knew prior to completing that application, the March 15 application, that she had died shortly after receiving the procedure. If you look at his medical records, which he authenticated in his request to admit, you'll notice in those medical records that he had been informed within five minutes of completing the procedure that she had collapsed in his office. You'll see in his answers to requests to admit. How old was she? She was in her 60s. I don't remember the exact time. Who? She was older than I am, I should say. But anyway, that she had collapsed within five minutes of receiving the procedure. Again, a dental procedure. These are all matters that we ensure. We issued a dental malpractice policy. And there is case authority, the case authority that we cite in our brief, Radcliffe v. Safeway, and I believe American Service case that we cited, that talks about the fact that there are instances where the court has found issues, as a matter of law, to be material, because any common sense reading would know that this would materially affect the risk. In the one case, a person did not report a minor who was driving a car regularly. The court said, well, we know that this is going to increase the risk. You don't need an affidavit. Also, another instance where a person who had several, this would be the American v. Mahoney case, where a person who had had several, a user of the car, had had several, his license revoked several times. The court said, we know this is going to materially affect the risk. In this court, in Gardner v. Country Life, the court found that a misrepresentation that was particularly egregious, we can find that that is material. And I would submit that given the circumstances of this case, the fact that the IDPR was surrounding this guy, that this would be a particularly egregious misrepresentation. Now, contrary to what the plaintiff says, we determine whether a matter of misrepresentation occurred based upon an objective basis, based on what the insured knew at the time of when he completed the application. In Golden Rule v. Schwartz, the court stated that the trial court is not required to accept any answer given by an insured. It said that a court may find, as a matter of law, that an answer was false, if it is clearly contradicted by the facts known to the insured at the time he completed the application. And no matter how much the insured professed to believe that it was truthful. Additionally, a material misrepresentation may void a policy, even if it was given in good faith. And in this case, based on Dr. Brewer's answers to his request to admit, his answer to the complaint, his answer to the IDPR complaint, as well as the affidavit presented by the plaintiff, he knew these things occurred. He knew that Ms. Hurlburt had collapsed in his office. He knew that she was in cardiac arrest when she was taken from the office. He performed CPR on her, but yet he didn't disclose any of this. He also knew about this IDPR investigation. He also knew the death certificate said natural causes. Yes, Your Honor. But the policy that the trial court noted doesn't talk about whether he believed it was negligent or approximate costs. It simply asks about any matter that may result in a claim. The March 5, 2005 application says that you get certified to the best of your knowledge that you're not aware of any circumstance that may result in a claim. The March 1, 2006 application says, I certify that I am not aware of any matter that may result in a potential claim, claim, suit, or complaint, and so forth. And none of that had, and you have to certify that none of that had occurred in the last year. And as the trial court found that the woman dying or collapsing within five minutes of giving the procedure, that may result in a claim. And in fact, it did result in a claim. And the 7th Circuit has pointed out in the case of TIG that, I think their quote was, it was surreal to think non-disclosure of an injunction that led to the insurer's exposure was not material. I mean, I understand we're looking backwards, but this did result in a claim. And the IDPR investigation did result in the man losing his license or being suspended for a little while. So again, the trial court certainly had enough information to find that any common sense would say that this may affect the risk. Additionally, contrary to what the plaintiff says, the Illinois Supreme Court in Golden Rule said that the carrier can reduce its level of knowledge if it uses, quote, the twin qualifiers of knowledge and belief. That if the carrier uses that language, you would make a lesser claim. Look at our applications. Our applications don't use the twin qualifier of knowledge and belief. I think that the plaintiff made a mistake quoting Golden Rule in that instance. Our March 5, 2005 application says, this is true to the best of your knowledge. We don't say knowledge and belief. And it was the word belief that the court looked at to say, well, now we can maybe look at a subjective interpretation, even though we can still find as a matter of law that it was false. Ours don't say knowledge and belief. And our March 1, 2006 application says, I certify that I'm not aware of any of this information. Also, if you listen to the argument, the plaintiffs really are not questioning any facts in this case. They're not really questioning. They're not saying that what he said was true, that he didn't have these things. What they're really talking about is a contract interpretation. They're saying he's not required by either the law or the application to have disclosed this information based on an interpretation of the contract, an interpretation of the law. But as I've noted, the court was correct to say that our applications aren't based on a subjective belief, aren't based on when he believes he committed negligence, aren't based on whether he believes a claim, or not based on only formal complaints. Our applications, the court correctly determined and interpreted the applications to say that there are any circumstances that may result in a complaint. And as an aside, as we point out, I think in a footnote in our brief, even assuming all the plaintiffs' arguments, there was an actual complaint. He admitted, Dr. Brewer admitted to knowing, in his request to admit, that prior to March 1, 2006, that a complaint had been made to the IDPR by one of his patients. So even under their interpretation, this would still be a misrepresentation sufficient to warrant a statement of policy. Turning to our next argument, the trial court was correct to find that neither waiver nor estoppel applied to prevent us from asserting our defenses. Waiver is an intentional relinquishment of a known right. An insurer can't be found to have waived a right if, by its words or its deeds, it makes somebody believe that it's not going to rely on those rights. The Delmont State Bar Association v. Correigious case that's relied upon by the plaintiff actually found that the insurer did not waive its rights to rescission, even though it waited a year between the time that it learned of the misrepresentations and the time that it rescinded the policy. In fact, in the Correigious case, the carrier defended the insurer for that year plus. And in fact, if you look at the reservation of rights letter in the Correigious case, they never mentioned misrepresentation. In our case, we did nothing to make either Dr. Brewer or even the plaintiffs believe that we weren't going to assert our rights. He tendered this case, and you'll see in the request to admit, he tendered and, I'm sorry, in the answer to the complaint. How about your failure to tender back premiums promptly? You say you did nothing. Isn't that something that could have been a little misleading? Well, first of all, in our letter dated July the 6th, we specifically say, and we're not covering you, for several reasons, material misrepresentation, late notice, and an exclusion, Exclusion A. But also, the law doesn't say that we have to tender back the premiums immediately. In fact, in our complaint, in our complaint for rescission, we filed a counter-complaint and a third-party complaint, both raising rescission. We say rescind the policy in order to return the premium back. That's in our wherefore clause. And just this year, I think it was in March or April of this year, a case called Horwitz v. Sonnenschein, Nathan Rosenthal. The appellate court, in that case, reversed dismissal of a complaint for rescission. And in that complaint for rescission, I believe it was the amended complaint, the plaintiff, who was seeking rescission, put in his complaint that he was ready, willing, and able to tender back the consideration. In our case, in our complaint, we say, order us to return back the premium. And in fact, I did. He sent it back to me because it disappeared. So we tried, and I spread it on record that we did. Additionally, in the cases that we cite, in our brief, I think it was the Puskar case, and the estate of Nazareth, I'm butchering that name. In those cases, there was nothing in the cases that say that the party seeking rescission either tendered back the machinery or tendered back the money. Instead, they filed a complaint for rescission, the court granted the rescission, and then balanced the payments, what was best to maintain the status quo. In fact, the appellate court went back and changed the payments in order to ensure the status quo. And in fact, in this case, since we were denying coverage on numerous grounds, including, well, three grounds, including late notice and the exclusion, it's possible the court would have found no coverage in a situation where he wasn't entitled to his premium back. And finally, the court correctly found that there was no estoppel. In the case of State Farm versus American Service, the court held that estoppel does not apply to rescission. The court in that case relied upon a Supreme Court case of employers versus Elko, which says that there can be no estoppel if there's no policy in effect. Well, that's what it's arguing about in this case. And again, the court in State Farm said estoppel does not apply to rescission. Furthermore, it doesn't apply when there are policy defenses. First of all, we argue late notice, application of exclusion, and as well as the misrepresentations. Since there was no duty to defend or no coverage in the first place, there was no duty to defend and no estoppel. Unless the court has any questions, any other argument, we're going to stand on our brief, but I'm happy to answer any questions on anything else. Thank you, counsel. Rebuttal? Thank you, Your Honor. I'll be brief. I think that the court keyed in on a central fact regarding the materiality of the assumed risk. There was no affidavit or other evidence put forward to support the materiality of the risk. I understand that counsel had a hard time securing that affidavit, but that's not justification for it being absent. If they had some other way to prove to the court that the risk was material, they certainly had an obligation to come forth with that. They didn't do that. For that reason, the court was certainly in error in finding that it was material. Regarding the Golden Rule case, it's important to note what the case did and did not say. The Golden Rule case said that the court need not accept the insured's version of their own knowledge where there is contrary evidence. In this case, there was no contrary evidence of his knowledge that there would be potential claims. That is the key point. If there was some other evidence that had been set forth, then the court could have been justified in that finding, but it wasn't under the facts that were submitted. That's all I have. Thank you, counsel. We'll take this matter under advisement and recess until 1 o'clock.